## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * *
United States of America        *
                                *
v.                              *          Cr. No. 1:13-cr-00028-SM
                                *
Kurt Sanborn                    *
* * * * * * * * * * * * * * * *
```

## SENTENCING MEMORANDUM AND MOTION FOR VARIANT SENTENCE

Defendant Kurt Sanborn, by and through Ramsdell Law Firm, submits this memorandum in advance of the sentencing hearing scheduled for December 17, 2015. In sum, Mr. Sanborn moves for a variant sentence below the advisory guidelines range based on "the history and characteristics of the defendant . . . [,]" pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005).

## LEGAL STANDARD

Since *Booker*, although the sentencing process commences with a United States Sentencing Guidelines calculation, the guidelines are merely "advisory," and district courts are required to consider all of the factors listed in 18 U.S.C. §3553(a) in imposing sentence. *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007); *Booker*, 543 U.S. at 262. A district court should begin its sentencing analysis with the advisory guidelines calculation, then its "next steps should include hearing argument from parties as to the proper sentence in a particular case, weighing the applicability of the sundry factors delineated in 18 U.S.C. §3553(a), reaching an ultimate sentencing determination, and explicating that decision on the record." *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008) (*citing Gall*, 128 S.Ct. at 596-97).

The paramount directive in 18 U.S.C. §3553(a) is that the Court must impose a

sentence that is "*sufficient, but not greater than necessary,* to comply with" the purposes of

sentencing. See *id.* (emphasis added).  The section 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) the need for the sentence imposed—

>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>> (B) to afford adequate deterrence to criminal conduct; [and]

>> (C) to protect the public from further crimes of the defendant . . . .

*Id.*  The importance of, and rationale for, the post-*Booker* and *Gall* sentencing procedure

described above has been summarized as follows:

> This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility.  In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. . . . Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 128 S.Ct. at 598.

*Martin*, 520 F.3d at 91.

## ADVISORY GUIDELINES CALCULATION AND PLEA AGREEMENT

On May 9, 2014, Mr. Sanborn pled guilty to wire fraud, mail fraud and bank

fraud.  The convictions are grouped for sentencing purposes pursuant to USSG

§3D1.2(d).  Presentence Investigation Report ("PSR") ¶38.  Because the offenses have

statutory maximum sentences of at least 20 years, the Base Offense Level ("BOL") for

Mr. Sanborn's conviction is 7.  PSR ¶39.

The PSR opines that a twelve level increase should be added to the BOL pursuant

to USSG § 2B1.1(b)(1)(G) because the applicable loss amount is $360,000.  PSR ¶¶30-

32.  However, the PSR properly states that $160,000 of the $360,000 loss was repaid in

October 2005, approximately seven and one-half years before Mr. Sanborn was indicted

for the crimes to which he has pled guilty.  PSR ¶34.  The PSR does not reduce the loss

amount to account by the repaid $160,000 because, although it was repaid years before

Mr. Sanborn was indicted, it was repaid after Mr. Sanborn was confronted by the two

individuals from whom the money was defrauded.  PSR ¶33.  Nonetheless, it is

undisputed that the actual loss amount is $200,000.  PSR ¶¶33-34.

    The plea agreement between the government and Mr. Sanborn contains a

stipulation that is not binding on the Court that the loss amount is not greater than

$200,000.  PSR ¶10.  A loss amount of $200,000 results in a ten level increase to the

BOL pursuant to USSG § 2B1.1(b)(1)(F).

    There are no victim related adjustments.  PSR ¶41.  A title insurance company

reimbursed the victims the actual $200,000 loss.  PSR ¶34.  There are no adjustments for

role in the offense or obstruction of justice.  PSR ¶¶42-43.

    Despite his guilty pleas, Mr. Sanborn did not receive an adjustment for acceptance

of responsibility.  PSR ¶36.  The PSR denies Mr. Sanborn credit for acceptance of

responsibility because he was arrested following the entry of his guilty pleas during an

event unrelated to the crimes for which he will be sentenced.  PSR ¶36.  According to the

PSR, the unrelated arrest demonstrates that Mr. Sanborn has not "voluntarily terminate[d]

or withdraw[n] from criminal conduct."  PSR ¶36.[1]

    Thus, the Adjusted Offense Level is 19 if the Court adopts the loss amount stated

in the PSR.  PSR ¶19.  If the Court adopts the loss amount provided by the stipulation in

_____

[1] The arrest and resulting conviction will be discussed in the succeeding section of this memorandum.

the plea agreement, the Adjusted Offense Level is 17.  Consequently, Mr. Sanborn's

Total Offense Level ("TOL") is 19 or 17.  *See* PSR ¶47.

Although the offenses before the Court for sentencing were committed years prior

to Mr. Sanborn's 2009 wire fraud conviction for which he received a 30 month sentence,

he receives 3 criminal history points for the 2009 conviction.  PSR ¶51.  Mr. Sanborn

also receives one criminal history point for a Massachusetts OUI offense that was

committed after the instant offenses.  PSR ¶50.  Because of those offenses, Mr. Sanborn's

criminal history category ("CHC") is III.  PSR ¶52.  At CHC III, TOL 19, the guidelines

imprisonment range is 37 to 46 months.  PSR ¶72.  At CHC III, TOL 17, the guidelines

imprisonment range is 30 to 37 months.

Pursuant to an agreement between the government and Mr. Sanborn, the

government seeks a sentence of 24 months imprisonment.  Mr. Sanborn is allowed to

request a sentence of 21 months.[2]

## ***BOOKER*** AND 18 U.S.C. §3553(a) VARIANCE

As explained above, the paramount directive in 18 U.S.C. §3553(a) is that the

Court must impose a sentence that is "*sufficient, but not greater than necessary,* to

comply with" the purposes of sentencing.  *Id.* (emphasis added).  The history and

characteristics of the defendant are among the express considerations stated in 18

U.S.C. §3553(a)(1).  An undeniable part of Mr. Sanborn's history is that the offenses

for which he is being sentenced involve conduct that occurred not less than ten years

---

[2] On December 17, the Court also is scheduled to sentence Mr. Sanborn on a supervised release violation. The respective recommendations of 24 and 21 months do not include the supervised release violation. Unless the parties reach an agreement before the sentencing hearing, it is anticipated that the government will seek a period of incarceration of three months for the supervised release violation and Mr. Sanborn will request a period of incarceration of six months, to be satisfied by home confinement.

ago and more than twelve years ago. PSR ¶¶14-30. After Mr. Sanborn committed the instant offenses, he served a sentence of 30 months imprisonment for wire fraud. PSR ¶13. For the reasons explained below, including that Mr. Sanborn already has served a 30 month sentence for a fraud conviction, a guidelines range sentence of 30 to 37 or 37 to 46 months is greater than necessary, to comply with the purposes of sentencing. *See* 18 U.S.C. §3553(a). *Id.* (emphasis added).

The age of the instant offenses significantly influences Mr. Sanborn's criminal history category, and therefore, the applicable advisory guidelines range. Although the offenses were committed before Mr. Sanborn's convictions for wire fraud and OUI, the sentencing guidelines assign four criminal history category points for those convictions. PSR ¶¶50-51. Accordingly, Mr. Sanborn's applicable criminal history category is III. PSR ¶52. As a result, Mr. Sanborn's criminal history category tends to overstate his actual criminal history and unfairly understates the unlikelihood of his recidivism.

The applicable guidelines range also overstates Mr. Sanborn's criminal history and likelihood of recidivism because he was not afforded an adjustment for acceptance of responsibility. The facts belie the conclusion in the PSR that Mr. Sanborn's June 2014 arrest for an unrelated matter demonstrates that he has not "voluntarily terminate[d] or withdraw[n] from criminal conduct." PSR ¶36. Mr. Sanborn's arrest did not involve fraud.

The PSR may not contain factually inaccurate information about the arrest, but at the same time its emphasis on allegations and an initial charging decision based on those allegations could be misperceived. The PSR states no less than five times that Mr. Sanborn was arrested in Rhode Island and initially charged with violation of a

protection order and domestic stalking. PSR ¶¶4, 7, 36, 51A, 62. The PSR less frequently mentions that the stalking arrest and allegations were forwarded to the Rhode Island Attorney General's Office, which has a domestic violence unit that prosecutes domestic stalking charges, and the Attorney General's Office declined prosecution. PSR ¶51. In October 2014, Mr. Sanborn pled *nolo contendre* to violation of a trespass order and was placed on probation for one year.

Mr. Sanborn's recent history includes an incident in which he demonstrated his ability to make the correct choice and reflects positively on the lack of likelihood that he will re-offend. In July 2015, Mr. Sanborn and two other inmates were incarcerated in a cell in the "medical" section of the Strafford County House of Corrections. After one of the inmates threatened the other inmate with sexual assault and mimicked gestures to demonstrate the assault, Mr. Sanborn reported the incident to a corrections officer. Mr. Sanborn subsequently was interviewed by, and cooperated with, a member of the Strafford County Sheriff's Department and a member of the United States Marshal's Service. Following the investigation, the inmate who committed the offense was administratively punished for the conduct.

Mr. Sanborn's history and characteristics also demonstrate emotional instability that is exacerbated by substantial stressors. Last December, Mr. Sanborn attempted suicide by carbon monoxide poisoning on Christmas Eve. PSR ¶66A. Five days later, he again attempted suicide, this time by drowning in a toilet at the Strafford County House of Corrections. PSR ¶66A. When evaluated at Strafford County, he was diagnosed with a "not otherwise specified trauma disorder." PSR ¶66A.

While incarcerated in Allenwood, Pennsylvania following his 2009 fraud conviction, Mr. Sanborn reported that he was victimized by a correctional officer.  PSR ¶66B.  The incident has left Mr. Sanborn frightened to the point of emotional trauma at the prospect of returning to Bureau of Prisons ("BOP") custody.  While Dr. Dragon found Mr. Sanborn competent to be sentenced, his report notes that Mr. Sanborn's "emotional lability and his self-depiction as a victim of abuse under conditions of confinement lead to the recommendation that he be afforded psychological treatment as soon as possible."  *See* Exhibit 1 to Motion for Competency Finding.  Dr. Drogan's report also notes Mr. Sanborn's "prominent emotional dependency issues [that] are entirely consistent with the interpersonal stress and material pressures that [Mr. Sanborn] describes as having contributed to his self-admittedly illegal activities."  *Id.*

**SENTENCING REQUEST**

Based on the combination of factors related to Mr. Sanborn's history and characteristics described above, he requests that the Court sentence him to a variant sentence of incarceration for a period of 21 months.  If the Court concludes that Mr. Sanborn's TOL is 19, the variance will be at the low end of the guidelines range five levels below the applicable range.  If the Court accepts the stipulation regarding the loss amount in the plea agreement, the variance is only three levels below the applicable guidelines range.  Such a sentence is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing and also reflects consideration of "the history and characteristics of the defendant."  *See* 18 U.S.C. §3553(a)(1).

Mr. Sanborn's emotional instability, in addition to two suicide attempts, has resulted in two changes of counsel and the necessity for a competency determination.

7

While there has been no attempt to delay the sentencing hearing, Mr. Sanborn has been in federal custody for seventeen months on the instant offenses.  If the Court sentences Mr. Sanborn to 21 months, and assuming that the BOP credits him with "good time" pursuant to 18 U.S.C. §3624(b), it is possible, maybe probable, that Mr. Sanborn will avoid being sent to a BOP facility to serve a few weeks on the instant offenses.

Mr. Sanborn also would avoid being sent to a BOP facility if the Court sentences him to a period of incarceration of six months, to be served by home confinement, on the supervised release violation.  If so, he will avoid the emotional trauma that results from his incarceration at Allenwood.

Mr. Sanborn also requests that the Court impose a period of supervised release of two years.  Finally, Mr. Sanborn requests that the Court recommend that Mr. Sanborn serve his period of incarceration at FMC Devens, the closest federal facility to Mr. Sanborn's family.

> Respectfully submitted,
>
> KURT SANBORN
>
> By his attorneys,

Dated: December 7, 2015

By: /s/ Michael D. Ramsdell
Michael D. Ramsdell (NH Bar No. 2096)
RAMSDELL LAW FIRM, P.L.L.C.
46 South Main Street
Concord, NH 03301
(603) 856-7536
mramsdell@ramsdelllawfirm.com

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading was provided to all counsel of record on today's date via electronic mail.

By: /s/ Michael D. Ramsdell
Michael D. Ramsdell